UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DESIGN BASICS, LLC,

       Plaintiff,

                                                Civil Case No. 16-14019

v.                                              Linda V. Parker

MITCH HARRIS BUILDING CO., INC.,
BLANK-HAM DEVELOPMENT, LLC,
MINDEN INVESTMENTS, LLC, and
MITCHELL L. HARRIS,

       Defendants.
_____/

## **OPINION AND ORDER**

Plaintiff Design Basics, LLC filed this lawsuit against Defendants on

November 11, 2016, alleging violations of the federal Copyright Act and the

Digital Millennium Copyright Act ("DMCA").  Defendant Blank-Ham

Development LLC and Minden-Investments, LLC have been terminated as parties.

The matter is presently before the Court on the following three[1] motions filed by

_____

[1] The docket suggests that there are six motions pending; however, Defendants
filed two versions of their motion to dismiss and motion for summary judgment,
with one copy redacting confidential information and the second copy filed under
seal.  Further, when filing their reply brief in support of their summary judgment
motion, Defendants inadvertently designated it as a separate motion  (*See* ECF No.
74.)

the remaining defendants, Mitch Harris Building Co., Inc. and Mitchell L. Harris
(hereafter collectively "Defendants"):

- Motion to Dismiss for Spoliation Evidence (ECF Nos. 57, 58);

- Motion to Strike Plaintiff's Expert & Expert Report (ECF No. 60); and

- Motion for Summary Judgment (ECF Nos. 62, 63).

The motions have been fully briefed.  Finding the facts and legal arguments
adequately presented in the parties' briefs, the Court is dispensing with oral
argument pursuant to Eastern District of Michigan Local Rule 7.1(f).

     The Court begins with Defendants' motion for sanctions and motion to strike
Design Basics' expert and expert report, as the outcome of those motions heavily
influences the Court's analysis of Defendants' summary judgment motion.  First,
the Court provides a general overview of the facts and procedural background
relevant to Defendants' motions for sanctions and to strike.

### Brief Factual and Procedural Background

     Design Basics is a Nebraska corporation engaged in the business of creating,
publishing, and licensing original architectural plans and designs.  Dennis Brozak
founded Design Basics and ran the company until it was purchased by Patrick
Carmichael, a Texas home builder and contractor, and Myles Sherman in 2009.

Since the mid-1980's, Design Basics has published home plan catalogs and, since the advent of the internet, has published its designs on its website and through its marketing partners.  It owns copyrights in numerous architectural works for which the United States Copyright Office has issued certificates of registration, including the plans at issue in this lawsuit: 2761 Mayberry, 1748 Sinclair, 2100 Fenton, 1752 Lancaster, 2656 Castlar, 8037 Carriage Hills, 3484 MacCready, and 2245 Tyndale (collectively "Copyrighted Works").

Between 1998 and 2005, Design Basics received average annual revenue of $4 million from the licensing of its original home designs.  Defendants—long-time residential home builders located in Brighton, Michigan—were among Design Basics' customers.  From approximately 1998 to 2006, Defendants purchased and/or received over a 100 of Design Basic's design plan catalogs and paid approximately $20,000 to purchase at least 40 construction licenses from Design Basics, including the Copyrighted Works.  Design Basics' licenses authorized Defendants to construct homes based on the Copyrighted Works, advertise the Copyrighted Works, and modify the Copyrighted Works to fit the needs of Defendants' customers.

Beginning in 2009, Design Basics' revenue fell well below $1 million annually.  Design Basics attributes the decline to widespread theft of its copyrighted plans by home builders and lumber yards, which it believes increased

3

dramatically between 2004 and 2009. Carmichael, who met Brozak in the mid-1990's, encouraged Design Basics to pursue copyright infringement lawsuits against these home builders and lumber yards. Carmichael pledged to pay for the litigation costs and expenses of these lawsuits and to "quarterback" the litigation with attorney Dana Lejune (Design Basics' counsel in this case), in exchange for a 50% interest in any amount recovered in the litigation. Eventually Brozak agreed to this plan and Design Basics filed its first copyright infringement lawsuit in March 2006: *Design Basics, Inc. v. Granite Ridge Builders, Inc.*, No. 1:2006cv0072 (N.D. Ind. filed Mar. 10, 2006) ("*Granite Ridge* Litigation").

Carl Cuozzo had been an employee at Design Basics since the late 1980's and Carmichael enlisted him to assist in the *Granite Ridge* Litigation, which eventually settled for approximately $3.6 million. Cuozzo thereafter quit Design Basics and began working for Carmichael, finding additional infringement matters to pursue on behalf of Design Basics. Additional employees of Design Basics were enlisted to assist Cuozzo in this endeavor: Paul Foresman (former President and current Vice President of Design Basics); Greg Dodge (current Vice President and Chief Technology Officer of Design Basics); and Trish Baker. [2]

---

[2] Design Basics LLC was formed in May 2009, after Carmichael purchased Design Basics, Inc. The restructuring of the company and their distinctions are not relevant for purposes of the pending motions. Thus, the Court refers to the pre- and post-2009 entities singularly as "Design Basics."

4

In May 2009, Carmichael, along with Sherman, purchased Design Basics, including its intellectual property.  By that time, approximately 40 possible infringement matters had been identified; however, by 2010, Design Basics had filed only four lawsuits against alleged copyright violators.  In subsequent years, it filed more than 100 copyright infringement matters.

In the meantime, in January  2010, Design Basics experienced a massive roof leak at its offices, causing water damage to the contents of cardboard banker boxes.  The boxes were marked "CC" and were believed to contain customer change orders.  They in fact contained, at least in part, important documents relating to the authorship of Design Basics' copyrighted designs.  The documents were destroyed.  According to Defendants, Design Basics destroyed other sources of information relevant to this matter.  Specifically, between 2009 and 2013, Design Basics allegedly destroyed 15 computers and a server used in its business. This included a desktop computer used by Cuozzo and a laptop computer used by Foresman—two individuals tasked with researching entities allegedly infringing Design Basics' copyrights.

Design Basics alleges that it discovered Defendants' infringing activity on November 13, 2013.  According to Design Basics, Defendants are displaying and marketing architectural works that copy Design Basics' 2761 Mayberry and 1748 Sinclair plans (also referred to collectively as the "Alleged Copied Works").

5

Additionally, Design Basics alleges that Defendants are displaying and marketing Copyrighted Works without attaching the required copyright management information ("CMI").[3]  Design Basics therefore filed this lawsuit on November 11, 2016, two days before the applicable three-year limitations period expired.

On June 1, 2017, the Court entered its first scheduling order in this matter. Between that date and July 20, 2020, the parties submitted eight stipulated orders extending the deadlines in that order, which the Court signed.  The Eighth Amended Scheduling Order—which the Court warned would be the last—set a July 29, 2020 deadline for Rule 26(a)(2) expert disclosures, an August 31, 2020 deadline for expert rebuttal disclosures, an October 1, 2020 deadline for fact and expert discovery, and a November 2, 2020 deadline for the filing of dispositive motions and motions challenging experts.

Design Basics provided Defendants with a copy of a report from its architectural expert, Matthew McNicholas, on September 30, 2020.  The report was authored on October 24, 2019.  When first served with Defendants' interrogatories on September 9, 2017, Design Basics did not identify McNicholas as an expert witness; rather, Design Basics responded that it had not yet retained an

---

[3] Specifically, Design Basics alleges that Defendants display and market the following Design Basics' plans without attaching CMI: 2100 Fenton, 1752 Lancaster, 2656 Castlar, 8037 Carriage Hills, 3484 MacCready, and 2245 Tyndale.

expert.  Design Basics never supplemented its answer.  However, Design Basics

identified McNicholas as a possible expert in its witness list filed September 29,

2017.  According to Defendants, they produced an "Expert Rebuttal Report" from

their expert, Dr. Robert Greenstreet, on August 31, 2020, despite not knowing who

was going to testify as an expert for Design Basics or what that expert was going to

say.

## Motion to Dismiss

In their motion to dismiss, Defendants ask the Court to dismiss Design

Basics' claims against them or, alternatively, for an adverse inference instruction

due to Design Basics' destruction of relevant evidence and failure to adequately

respond to Defendants' discovery requests.  Specifically as to the former,

Defendants refer to the documents relevant to the authorship of the Alleged Copied

Works which were destroyed after the 2010 flood and the computers and server

destroyed between 2009 and 2014, which Defendants maintain may have contained

evidence showing that Design Basics discovered Defendants' alleged infringement

before November 13, 2013 and that, therefore, this lawsuit was filed beyond the

relevant limitations period.  Defendants also assert that, in response to their

discovery requests, Design Basics has not adequately searched its electronic assets,

inquired of key employees or asked them to collect information responsive to

Defendants' discovery requests, searched the files of key employees, or produced

7

documents that Carmichael and/or Design Basics' employees testified exist. Defendants maintain that Design Basics' destruction of evidence and similar discovery abuses led a magistrate judge in this district to recommend sanctions against it in another copyright infringement action: *Design Basics, LLC v. Marhofer*, No. 12-14894, 2015 U.S. Dist. LEXIS 178465 (E.D. Mich. June 15, 2015) (M.J. Hluchaniuk).

Rule 37 of the Federal Rules of Civil Procedure allows a court to issue sanctions against a party that fails to comply with a court order compelling discovery. The rule identifies the available sanctions, including an adverse inference instruction, "prohibiting the disobedient party from supporting or opposing designated claims or defenses," or dismissing the action in whole or in part. Fed. R. Civ. P. 37(b)(2). Rule 37 requires sanctions even without a court order where a party fails to provide information or identify a witness as required under the rule, unless the failure was substantially justified or is harmless. Fed. R. Civ. P. 37(c)(1). However, absent a motion, such sanctions are limited to the exclusion of that information or witness at a hearing or trial. *Id.* Upon motion, the court *may* impose additional sanctions, including those available under Rule 37(b)(2).

A court may also "impose sanctions on a party for misconduct in discovery under its inherent power to manage its own affairs." *Residential Funding Corp. v.*

8

*DeGeorge Fin. Corp.*, 306 F.3d 99, 106-07 (6th Cir. 2002) (citing *DLC Mgmt. Corp. v. Town of Hyde Park*, 163 F.3d 124, 135-36 (2d Cir. 1998)).  Prior to sanctioning a party for bad faith conduct in litigation under its inherent authority, however, the court must comply with the mandates of due process and find that the requisite bad faith exists.  *First Bank of Marietta v. Hartford Underwriters Ins. Co.*, 307 F.3d 501, 511 (6th Cir. 2002) (citing *Chambers v. Nasco, Inc.*, 501 U.S. 32, 50 (1991)).  Moreover, while a federal court is not precluded from using its inherent authority to sanction bad faith conduct simply because that conduct could also be sanctioned under a statute or federal rule, the Supreme Court has advised courts to "ordinarily . . . rely on the Rules rather than the inherent power."  *Id.* (emphasis removed) (quoting *Nasco*, 501 U.S. at 50).

## Spoliation

The Court begins with the evidence Design Basics irrefutably destroyed: authorship records, computers, and a server.  Pursuant to its inherent powers, a court may "impose many different kinds of sanctions for spoliated evidence, including dismissing a case, granting summary judgment, or instructing a jury that it may infer a fact based on lost or destroyed evidence."  *Automated Solutions Corp. v. Paragon Data Sys., Inc.*, 756 F.3d 504, 513 (6th Cir. 2014) (quoting *Adkins v. Wolever*, 554 F.3d 650, 652-53 (6th Cir. 2009)).  "Spoliation is defined as the intentional destruction of evidence that is presumed to be unfavorable to the

9

party responsible for its destruction." *United States v. Boxley*, 373 F.3d 759, 762

(6th Cir. 2004) (citing *Nationwide Mut. Fire Ins. Co. v. Ford Motor Co.*, 174 F.3d

801, 804 (6th Cir. 1999)).  To warrant sanctions for the spoliation of evidence, the

movant must show:  "(1) that the party having control over the evidence had an

obligation to preserve it *at the time it was destroyed*; (2) that the records were

destroyed with a culpable state of mind[4]; and (3) that the destroyed evidence was

"relevant" to the party's claim or defense such that a reasonable trier of fact could

find that it would support that claim or defense."  *Beaven v. U.S. Dept. of Justice*,

622 F.3d 540, 553 (6th Cir. 2010) (emphasis added) (quoting *Residential Funding*,

306 F.3d at 107).

## Duty to Preserve

The Sixth Circuit has stated that the duty to preserve attaches when the party

"has notice that the evidence is relevant to litigation or should have known that the

evidence may be relevant to future litigation." *John B. v. Goetz*, 531 F.3d 448, 459

(2008) (citing *Fujitsu Ltd. v. Fed. Express Corp.*, 247 F.3d 423, 436 (2d Cir.

2001); *Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 216-18 (S.D.N.Y. 2003)).

According to Defendants, because by 2009 Design Basics had a business strategy

of identifying and suing builders for copyright infringement, "future litigation"

---

[4] As discussed *infra* at pages 12-13, the 2015 amendments to the Federal Rules of
Civil Procedure impacted this second element.

means any potential lawsuit Design Basics might file against any defendant to protect its intellectual property.  Defendants do not cite a single case in which a court found the duty to preserve information to have existed indefinitely due to the possibility of future copyright litigation.  Nor do Defendants cite any case interpreting future litigation so expansively in any context.

The term "future litigation" does not mean any possible or hypothetical lawsuit.  Instead, it means "reasonably foreseeable" *specific* litigation.  *Zubulake*, 220 F.R.D. at 216 (quoting *West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (2d Cir. 1999)); *see also United States v. Kitsap Physicians Serv.*, 314 F.3d 995, 1001 (9th Cir. 2002) (finding no spoliation because the defendant was not on notice of a "future specific" lawsuit).  The duty to preserve evidence runs to an identifiable opposing party.  *Town of Westport v. Monsanto Co.*, No. 14-12041, 2015 WL 13685105, at *4 (D. Mass. Nov. 5, 2015) (citing *In re Ethicon, Inc. v. Pelvic Repair Sys. Prod. Antitrust Litig.*, 299 F.R.D. 502, 516 (S.D. W. Va. 2014); (*Delta-AirTran Baggage Fee Antitrust Litig.*, 770 F. Supp. 2d 1299, 1308 (N.D. Ga. 2011); *Point Blank Solutions, Inc. v. Toyobo Am., Inc.*, No. 09-61166, 2011 WL 1456029, *26 (S.D. Fla. Apr. 5, 2011); *Brigham Young Univ. v. Pfizer, Inc.*, 282 F.R.D. 566, 572 (D. Utah 2012)).  Stated differently, the "duty to preserve relevant evidence arises when the party in possession of the evidence knows that litigation *by the party seeking the evidence* is pending or probable . . .."  *Kounelis*

11

*v. Sherrer*, 529 F. Supp. 2d 503, 518 (D.N.J. 2008) (emphasis added) (citing *Joe Hand Promotions v. Sports Page Cafe*, 940 F. Supp. 102, 104 n.13 (D.N.J. 1996); *Baliotis v. McNeil*, 870 F. Supp. 1285, 1290 (M.D. Pa. 1994)); *see also Point Blank Solutions*, 2011 WL 1456029, at *25 (quoting *Kounelis*); *Realnetworks, Inc. v. DVD Copy Control Ass'n*, 264 F.R.D. 517, 526-27 (N.D. Cal. 2009) (holding that a "general concern over litigation" regarding the product RealDVD did not "create a duty to preserve all documentation related to RealDVD" and that a duty to preserve only arose when "a potential claim was identified or future litigation was probable" with the parties in question). The party asserting spoliation "must first show that [the spoliating party] owed *them* a duty to preserve documents." *In re Delta/Air Tran*, 2011 WL 915322, at *5.

Design Basics destroyed the authorship documents, server, and most of the computers before November 13, 2013, when it claims to have discovered Defendants' infringing activity. The authorship documents were destroyed in early 2010 and the computers and server were discarded sometime between 2009 and 2013. Defendants present no evidence to show that Design Basics had notice that the subject documents, server, and computers were relevant to the instant litigation or should have known that the evidence may be relevant to specific future litigation when they were destroyed. This distinguishes the present matter from *Marhofer*, the case on which Defendants primarily rely to support their spoliation motion. In

12

*Marhofer*, the magistrate judge concluded that Design Basics had a duty to preserve as early as November 2009, when it claimed to have discovered evidence of its claims against the defendants. 2015 U.S. Dist. LEXIS 178465, at *4. However, the one exception in the instant matter is the laptop computer Cuozzo used from approximately 2012 to 2014, which was recycled in or around April 2014, several months after Design Basics purportedly discovered Defendants' infringing activity. (Cuozzo 3/5/20 Dep. at 9-10, ECF No. 58-3 at Pg ID 2236.) As of April 2014, Design Basics did have a duty to preserve relevant information. However, for the reasons stated below, satisfaction of this element alone is not enough to impose the requested spoliation sanctions.

## Culpable State of Mind

Effective December 1, 2015, Federal Rule of Civil Procedure 37 was amended to include the following:

> (e) **Failure to Preserve Electronically Stored Information**. If electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court:
>
> (1) upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice; or

13

> (2) only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may:
>
> (A) presume that the lost information was unfavorable to the party;
>
> (B) instruct the jury that it may or must presume the information was unfavorable to the party; or
>
> (C) dismiss the action or enter a default judgment.

Fed. R. Civ. P. 37(e).  As a result of this amendment, a party seeking the more severe sanction of dismissal or an adverse inference instruction must show that evidence was destroyed with the " 'intent' to deprive [the moving party] of the information's use." *Applebaum v. Target Corp.*, 831 F.3d 740, 745 (6th Cir. 2016) (quoting Fed. R. Civ. P. 37(e)).  "A showing of negligence or even gross negligence will not do the trick." *Id.* (citing Fed. R. Civ. P. 37, 2015 Advisory Comm. Note).

The Court is not able to conclude that Cuozzo's laptop was recycled with the intent to deprive Defendants of information contained therein.[5]  First, according to

---

[5] Defendants believe Design Basics' actions are nefarious—consistent with the business model Defendants believe Design Basics adopted in 2009 to earn its revenue primarily through intellectual property shakedowns rather than the licensing of its architectural works.  Whether Design Basics is a copyright troll or simply a copyright owner vigorously protecting its intellectual property is something the Court cannot know for sure.  However, as the latter is a legitimate endeavor, Design Basics' aggressive pursuit of claimed infringers is not sufficient on its own to confer bad faith in its litigation tactics.

Cuozzo, the laptop's hard drive was backed up before it was destroyed.  (Cuozzo

3/5/20 Dep. at 9-11, ECF No. 58-3 at Pg ID 2235-35; *see also* Dodge 2//27/20

Dep. at 108-113, ECF No. 64-19 (indicating that hard drives were preserved before

laptops were destroyed).)  While Defendants point out that relevant information on

the laptop could have been deleted before the backup, there is no evidence that it

was.

Second, Defendants offer nothing but supposition that Cuozzo had any

information on the laptop relating to them.  Defendants maintain that there must

have been information about them on Cuozzo's laptop because he was heavily

involved in researching potential infringers and researched Defendants in 2014.

But Design Basics has indicated that Paul Foresman and Rick Molnar discovered

Defendants' allegedly infringing activity (*see* Dodge 2/27/20 Dep. at 139, ECF No.

64-19; Answer No. 3 to Defs' Interrogatories, ECF No. 66-9 at Pg ID 3477), and

Cuozzo testified that the research he did in April 2014 involved reviewing some

documents (i.e., "papers") that Foresman gave him (Cuozzo 3/5/20 Dep. at 50-53,

ECF No. 58-3 at Pg ID 2245).  Cuozzo testified that Foresman gave him these

physical documents, Cuozzo never scanned them into his computer, and that

Cuozzo returned them to Foresman afterward.  (*Id.*)  Defendants also assert that

Cuozzo admittedly had folders related to Defendants on prior laptops.  However,

15

the deposition testimony cited by Defendants does not support this assertion.[6]  (*See*

Mot. at 30 n. 18, ECF No. 57 at Pg ID 1370 (citing Cuozzo 3/6/20 Dep. at 50, ECF

No. 58-3 at Pg ID 2245)).)

For these reasons, the Court concludes that spoliation sanctions are not

warranted.

## Other Alleged Discovery Abuses

Defendants argue that sanctions are further warranted due to other discovery

abuses by Design Basics.  More specifically, Defendants maintain that Design

Basics did not adequately search its electronic assets or inquire of key employees

to uncover information that should have been produced in response to Defendants'

discovery requests.  For example, Defendants believe that if Design Basics had

more diligently searched, it would have located and been required to produce pre-

2014 infringement research concerning Defendants, information related to

Defendants in its Chelsea Lumber files, information concerning Defendants in

---

[6] For these reasons, the Court also cannot conclude that the destruction of Cuozzo's laptop resulted in the spoliation of information relevant to Defendants' defenses. The Court finds it unnecessary to discuss the relevance element in depth, however, as a movant's inability to show any one element precludes a spoliation sanction. *Adkins v. Wolever*, 692 F.3d 499, 504 (6th Cir. 20012) (explaining that the test prescribed in *Beaven* is conjunctive and thus if at least one of the prongs is not satisfied, a spoliation sanction is unwarranted).

Rick Molnar's files, and a "Suspected Infringement Form" for Defendants dated earlier than the one produced.

Defendants, however, never filed a motion to compel in this matter to bring to the Court's attention the now purported insufficiencies in Design Basics' responses to Defendants' discovery requests. As a result, the Court has never been able to question Design Basics as to how they searched for information to respond to Defendants' discovery requests. Nor, as a result, has the Court ordered Design Basics to search differently or more diligently for the information Defendants believe exists but has not been produced. Rule 37 does not contemplate the sanctions Defendants seek absent such a motion or order. *See* Fed. R. Civ. P. 37(b), (c). Without this process, the Court cannot conclude with certainty that Design Basics has in fact failed to produce documents or provided insufficient answers in response to Defendants' discovery requests.[7]

Defendants also assert that Design Basics submitted a false declaration from Janie Murnane concerning the destruction of authorship records due to water damage. The Court finds it unnecessary to consider this assertion, however, in

---

[7] Defendants merely speculate and are suspicious that additional relevant evidence has been withheld. The Court cannot sanction a party for failing to produce evidence where there is no clear indication the evidence even exists.

light of its finding that the destruction occurred before Design Basics had a duty to preserve this evidence in connection with the present lawsuit.

While the Court retains the inherent authority to sanction a party for bad-faith conduct, Rule 37 offered Defendants an adequate mechanism to address Design Basics' purported discovery abuses. As the Supreme Court and Sixth Circuit have advised, a court should be reluctant to use its inherent power where an available rule or statute is "up to the task[.]" *First Bank of Marietta*, 307 F.3d at 511 (quoting *Chambers*, 501 U.S. at 50).

For these reasons, the Court is denying Defendants' request for sanctions based on Design Basics' purported discovery abuses.

## Motion to Strike Expert

Defendants move to strike the testimony and report of Design Basics' expert, Matthew McNicholas, because Design Basics served Defendants with the report on September 30, 2020, after the July 29, 2020 deadline in the Court's scheduling order. Defendants claim prejudice due to the untimely filing because discovery closed the day after the report was produced.

Design Basics maintains in response that counsel for the parties repeatedly agreed to extend the deadlines in this case—as reflective of their eight stipulations to do so—and that Design Basics' counsel was in good faith acting under an agreement with Defendants' counsel to produce expert reports beyond the date set

18

forth in the final scheduling order when it produced the report on September 30.

As evidence of such an agreement, Design Basics points out that neither party filed

an expert report by the July 29 deadline and that defense counsel never asked about

Design Basics' absent expert report.  Further, Design Basics maintains that the

expert report produced by Defendants on August 31, 2020—also beyond the

scheduling order's deadline—is in fact not a rebuttal report—despite its label—but

the expert's *initial* report.  According to Design Basics, its counsel repeatedly

communicated to Defendants' counsel that the report of Design Basics' expert was

already prepared but would not be produced until Defendants' report was ready, as

the scheduling order required simultaneous production of initial expert reports.

Design Basics counters Defendants' claim of prejudice, asserting that counsel

discussed continued discovery, despite the passing of the discovery deadline,

including depositions of the parties' experts.

Notably, in reply, Defendants do not refute Design Basics' assertions

regarding the parties' communications concerning expert reports and discovery.

(*See* ECF No. 72.)

Under Rule 26 of the Federal Rules of Civil Procedure, parties must disclose

*inter alia* the identity of trial witnesses and a written report of expert witnesses.

Fed. R. Civ. P. 26(a)(2).  A party using a retained expert must furnish a written

report containing "a complete statement of all opinions to be expressed and the

basis and reasons therefor." Fed. R. Civ. P. 26(a)(2)(B). These disclosures must be made "at the times and in the sequence that the court orders." Fed. R. Civ. P. 26(a)(2)(C).

Federal Rule of Civil Procedure 37(c)(1) "mandates that a trial court punish a party for discovery violations in connection with Rule 26 unless the violation was harmless or is substantially justified." *Roberts ex rel. Johnson v. Galen of Virginia, Inc.*, 325 F.3d 776, 782 (6th Cir. 2003) (quoting *Vance v. United States*, No. 98-5488, 1999 WL 455435, at *3 (6th Cir. June 25, 1999)). The burden falls on the potentially sanctioned party to prove harmlessness and/or substantial justification. *Id.* Here, Design Basics provides a substantial justification: an agreement between the parties to delay the exchange of expert reports. Defendants do not dispute Design Basics' assertion that counsel had such an agreement, focusing instead on the unrelated discovery abuses of which they accuse Design Basics. Further, despite Defendants' label, their expert's report—also submitted past the deadline for doing so in the Court's scheduling order—clearly is not a rebuttal report. (*See* ECF No. 60-4.)

Moreover, in light of the parties' agreement to conduct the depositions of their experts beyond the discovery deadline, the "late" disclosure of McNicholas' report is harmless. Adding to this finding is the fact that Design Basics had informed Defendants well before the expert deadlines that its expert's report was

20

complete and ready for production but was not produced because of the parties' agreement to exchange their reports simultaneously.

For these reasons, the Court is denying Defendants' motion to strike.

## Summary Judgment

Defendants seek summary judgment with respect to Design Basics' claims against them. Defendants first argue that Design Basics cannot prove its claims because it lacks proof of ownership. Next Defendants argue that Design Basics' claims are barred by the applicable three-year limitations period. Lastly, Defendants maintain that Design Basics cannot prove infringement or the necessary removal of CMI.

The standard for evaluating Defendants' summary judgment motion is well established and need not be elaborately restated. Pursuant to Federal Rule of Civil Procedure 56, a movant is entitled to summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The court must accept as true the non-movant's evidence and draw "all justifiable inferences" in the non-movant's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

## Ownership

To prove its claims, Design Basics must show that it is the owner of the copyrights at issue. *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 387

F.3d 522, 534 (6th Cir. 2004) (citing *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*,

499 U.S. 340, 361 (1991); *Kohus v. Mariol*, 328 F.3d 848, 853 (6th Cir. 2003))

(stating elements of a copyright infringement claim); 17 U.S.C. § 1202(b)(1) ("No

person shall, *without the authority of the copyright owner* or the law . . .

intentionally remove or alter any copyright management information") (emphasis

added).  Defendants maintain that Design Basics cannot prove that it is the owner

of the Copyrighted Works.

There is no dispute that Design Basics registered the Copyrighted Works

with the United States Copyright Office.  (*See* Compl. Exs. 1-8, ECF Nos. 1-2 to 1-

9.)  In judicial proceedings, "the certificate of registration made before or within

five years after first publication of the work shall constitute prima facie evidence of

the validity of the copyright and the facts stated in the certificate."  17 U.S.C.

§ 410(c); *see also Lexmark*, 387 F.3d at 533-34.  Defendants have the burden to

rebut this presumption.  *Id.* (citing *Hi-Tech Video Prods., Inc. v. Capital

Cities/ABC, Inc.*, 58 F.3d 1093, 1095 (6th Cir. 1995)).  To rebut the presumption of

validity, the defendant "must simply offer some evidence or proof to dispute or

deny the plaintiff's prima facie case of infringement."  *United Fabrics Int'l, Inc. v.

C&J Wear, Inc.*, 630 F.3d 1255, 1257 (9th Cir. 2011) (citations omitted).

Design Basics' copyright registrations list it as the author of the works.  (*See*

Compl. Exs. 1-8, ECF Nos. 1-2 to 1-9.)  Copyright ownership vests in the work's

author.  17 U.S.C. § 201(a).  Usually, the author is the creator of the work.  *Id.*

§ 102.  However, there is an exception for "works made for hire."  *Id.* § 201(b).

If the work is made for hire, the owner is the person for whom the work was

prepared.  *Id.*  The Copyright Act defines a "work made for hire" as:

> (1) a work prepared by an employee within the scope of his or her employment; or
>
> (2) a work specially ordered or commissioned for use as a contribution to a collective work, as a part of a motion picture or other audiovisual work, as a translation, as a supplementary work, as a compilation, as an instructional text, as a test, as answer material for a test, or as an atlas, if the parties expressly agree in a written instrument signed by them that the work shall be considered a work made for hire. . . .

*Id*. § 101.  Architectural works do not fit into any of the categories of "specially

ordered or commissioned" work.  *Warren Freedenfeld Assoc. v. McTigue*, 531

F.3d 38, 48 (1st Cir. 2008) (citing *M.G.B. Homes, Inc. v. Ameron Homes, Inc.*, 903

F.2d 1486, 1492 (11th Cir. 1990); *Meltzer v. Zoller*, 520 F. Supp. 847, 855 (D.N.J.

1981)); *Richard J. Zitz, Inc. v. Pereira*, No. 99-9399, 2000 WL 1239830, at *4 (2d

Cir. Aug. 31, 2000).

Defendants rely in part on the destruction of the authorship documents and

the sanctions requested for that destruction to rebut the presumption that Design

Basics is the owner of the Copyrighted Works.  However, for the reasons discussed

23

earlier, Defendants are not entitled to an adverse inference based on spoliation.[8]

Defendants also rely on deposition testimony reflecting that individuals identified as the creators of Design Basics' Copyrighted Works were not employees of Design Basics when the works were created.  (Cuozzo 3/5/20 Dep. at 202-09, ECF No. 58-3 at Pg ID 2274-75.)  Even if such evidence "casts doubt" on the validity of the copyrights, Design Basics responds with executed assignments from several individuals identified as designers of the Copyrighted Works, pursuant to which the individuals assigned their right, title, and interest in the works to Design Basics.  (ECF Nos. 64-6 to 64-8.)  Ownership of a copyright can arise through assignment, also.  *See In re Napster, Inc. v. Copyright Litig.*, 191 F. Supp. 2d 1087, 1097 (N.D. Cal. 2002).

For these reasons, Defendants fail to show that there is no genuine issue of material fact as to Design Basics' ownership (or lack thereof) of the Copyrighted Works.

---

[8] Defendants cannot overcome the presumption that Design Basics owns the Copyrighted Works simply by pointing out that Design Basics lacks evidence to demonstrate who authored those works.  Design Basics' obligation to present such evidence does not arise unless and until Defendants present evidence casting doubt on the validity of the copyright.  In other words, Design Basics does not have to offer *any* proof other than the certificates of registration unless and until Defendants present evidence to rebut the prima facie presumption of copyright validity that accompanies a registration certificate.

24

## Statute of Limitations

A three-year limitations period applies to claims under the Copyright Act
and the DMCA.  17 U.S.C. § 507(b).  Such claims "accrue[] when a plaintiff
knows of the potential violation or is chargeable with such knowledge."  *Roger
Miller Music, Inc. v. Sony/ATV Publ'g, LLC*, 477 F.3d 383, 390 (6th Cir. 2007)
(quoting *Bridgeport Music, Inc. v. Rhyme Syndicate Music*, 376 F.3d 615, 621 (6th
Cir. 2004)).  "Because each act of infringement is a distinct harm, the statute of
limitations bars infringement claims that accrued more than three years before suit
was filed, but does not preclude infringement claims that accrued within the
statutory period."  *Bridgeport Music*, 376 F.3d at 621 (citing *Roley v. New World
Pictures, Ltd.*, 19 F.3d 479, 481 (9th Cir. 1994)); *Roger Miller Music*, 477 F.3d at
390 (explaining that "a claim for copyright infringement can accrue more than
once because each infringement is a distinct harm").  "[E]ach new infringing act
causes a new three year statutory period to begin."  *Roger Miller Music*, 477 F.3d
at 390 (quoting *Ritchie v. Williams*, 395 F.3d 283, 288 n.5 (6th Cir. 2005)).

To support their statute of limitations defense, Defendants once again point
to Design Basics' purported spoliation and destruction of evidence.  Defendants
argue that Design Basics concealed and destroyed the evidence demonstrating that
its claims are stale.  As discussed above, however, the Court declines to issue

25

spoliation sanctions.  Therefore, Defendants have not met their burden of showing

that the statute of limitations bars Design Basics' claims.

## Proof of Copyright Infringement

Defendants maintain that Design Basics lacks evidence to prove that

Defendants copied its architectural works.

A plaintiff asserting copyright infringement must show "(1) ownership of a

valid copyright [in the work] at issue . . . and (2) that the defendant copied

protectable elements of the work." *Lexmark Int'l*, 387 F.3d at 534 (citing *Feist

Publ'ns*, 499 U.S. at 361; *Kohus*, 328 F.3d at 853).  "The first prong tests the

originality and non-functionality of the work, both of which are presumptively

established by the copyright registration.  *Id*. (internal citation omitted).  "The

second prong tests whether any copying occurred (a factual matter) and whether

the portions of the work copied were entitled to copyright protection (a legal

matter)."

As an initial matter, Defendants point out that they were authorized to

construct homes based on Design Basics' plans, redraw/modify the plans, and

advertise the plans in their business operations.  (Carmichael 3/4/20 Dep. at 149,

ECF No. 57-14 at Pg ID 1628; Cuozzo 3/6/20 Dep. at 292-295, ECF No. 62-3 at

Pg ID 2545-46.)  "Anyone who is authorized by the copyright owner to use the

copyrighted work  . . . is not an infringer of the copyright with respect to such use."

26

*Sony Corp. of Am. v. Universal City Studios Inc.*, 464 U.S. 417, 433 (1984);

*Johnson v. Jones*, 149 F.3d 494, 500 (6th Cir. 1998).  Authorized use may be

granted in writing, orally, or implied from conduct.  *Johnson*, 149 F.3d at 500; *see*

*also Graham v. James*, 144 F.3d 229, 235 (2d Cir. 1998).

Design Basics is not required to show that Defendants' use of Design

Basics' copyrighted works was unauthorized; rather, Defendants bear the burden of

proving that their use of Design Basics' plans was authorized.  *Muhammad-Ali v.*

*Final Call, Inc.*, 832 F.3d 755, 760-61 (7th Cir. 2016); *John G. Danielson, Inc. v.*

*Winchester-Conant Props., Inc.*, 322 F.3d 26, 40 (1st Cir. 2003).  Defendants do

not satisfy this burden.  This is because Defendants offer no evidence to show that

the alleged infringing plans originated from Design Basics' 2761 Mayberry or

1748 Sinclair plan.  In other words, Defendants fail to show that they modified

licensed plans to develop the plans that Design Basics alleges are substantially

similar to the Alleged Copied Works.

Defendants alternatively argue that Design Basics cannot demonstrate that

they copied the 2761 Mayberry or 1748 Sinclair plan.  Where direct evidence of

copying is absent—which appears to be conceded in this case (*see* ECF No. 69 at

Pg ID 3717)—a plaintiff alleging copyright infringement must show that the

defendant had access to the allegedly infringed work and that there is a "substantial

similarity between the two works at issue."  *Kohus*, 328 F.3d at 853-54 (quoting

27

*Ellis v. Diffie*, 177 F.3d 503, 506 (6th Cir. 1999)).  Access is not at issue here, as

Defendants admittedly licensed the Alleged Copied Works.

In *Kohus*, the Sixth Circuit adopted the following two-step test for

substantial similarity:

> [T]he first step "requires identifying which aspects of the
> artist's work, if any, are protectible by copyright," . . . the
> second "involves determining whether the allegedly infringing
> work is 'substantially similar' to protectible elements of the
> artist's work,

*Id.* at 855 (quoting *Sturdza v. United Arab Emirates*, 281 F.3d 1287, 1296 (D.C.

Cir. 2002).  Expert testimony "will almost certainly [be] required" at the first step.

*Id.* at 856.  For example, where the work at issue involves technical drawings, a lay

person may not "understand what constitutes creativity in th[e] area, which

elements are standard for the industry, and which elements are dictated by

efficiency or by external standards." *Id.* at 858.  Whether expert testimony is

required at the second step will depend on who the "intended" or "target" audience

is. *Id.* at 857 (emphasis removed).

As relevant to the first step, "[n]ot all 'copying' is actionable[.]" *Id.* at 853.

A plaintiff alleging copyright infringement "must prove 'copying of constituent

elements of the work *that are original*." *Id*. (alteration in *Kohus*) (quoting *Feist*

*Publ'ns*, 499 U.S. at 361).  Therefore, "[t]he essence of the first step is to filter out

the unoriginal, unprotectible elements—elements that were not independently

created by the inventor, and that possess no minimal degree of creativity—through a variety of analyses." *Id*. at 855 (internal citation omitted). In cases involving a functional object, it also "is necessary to eliminate those elements dictated by efficiency." *Id.* at 856 "It also is important to filter out *scenes a faire*: those elements that follow naturally from the work's theme, rather than from the author's creativity, or elements that are dictated by external factors such as particular business practices." [9] *Id.* (internal quotation marks and citations omitted); *see also Design Basics, LLC v. Forrester Wehrle Homes, Inc.*, 302 F. Supp. 3d 933, 942 (N.D. Ohio 2018) (explaining that "external considerations—that is, industry standards, consumer expectations, zoning requirements, and the like—can limit the amount of protected expression within architectural works.").

"Once the unprotectible elements have been filtered out, the second step is to determine whether the allegedly infringing work is substantially similar to the protectible elements of the original." *Id.* at 856. In *Kohus*, the Sixth Circuit modified the standard employed at this step, providing for different approaches depending on the "*intended audience.*" *Id*. at 857. As the court explained:

> This will ordinarily be the lay public, in which case the finder of fact's judgment should be from the perspective of the lay observer or . . . the ordinary reasonable person. But in cases

---

[9] As one district court alternatively explained: "a scene that must be included in a work[.]" *Design Basics, LLC v. Forrester Wehrle Homes, Inc.*, No. 3:15cv666, 2017 WL 5444569, at *4 (N.D. Ohio 2017).

> where the audience for the work possesses specialized expertise
> that is relevant to the purchasing decision and lacking in the lay
> observer, the trier of fact should make the substantial similarity
> determination from the perspective of the intended audience.
> Expert testimony will usually be necessary to educate the trier
> of fact in those elements for which the specialist will look.

*Id.* The Sixth Circuit has warned, however, that "a court should be hesitant to find

that the lay public does not fairly represent a work's intended audience." *Id.*

(quoting *Dawson v. Hinshaw Music, Inc.*, 905 F.3d 731, 733 (4th Cir. 1990)).

Defendants assert that Design Basics lacks evidence to show that the alleged

infringing plans are substantially similar to Design Basics' Alleged Copied Works.

First, Defendants maintain that Design Basics' expert on copying should not be

allowed to testify because his expert report was produced beyond the deadline in

the Court's scheduling order.  Second, according to Defendants, Design Basics'

corporate designee, Cuozzo, is unqualified to opine on "substantial similarity" as

he was unable to provide a definition of "infringement" during his deposition.

Lastly, Defendants argue that Design Basics cannot demonstrate substantial

similarity because the Alleged Copied Works contain only unprotected elements.

As discussed above, the Court is not striking the testimony of Design

Basics' expert.  With respect to Cuozzo, he is not called as a legal expert and thus

his inability to define the term "infringement" is immaterial.  It appears that he has

sufficient experience in home design plans (*see* Cuozzo Decl. ¶¶ 2, 4, ECF No. 69-

2 at Pg ID 3756-57) to testify regarding the components of architectural works and to opine on the similarities between the relevant plans. With this evidence (i.e., the testimony of Design Basics' expert, Matthew McNicholas, and Cuozzo), there is a genuine issue of material fact with respect to substantial similarity and whether the Copyrighted Works contain protectable elements. Further, after conducting a side-by-side comparison of the plans and examining the purported differences, the Court believes the issue of substantial similarity is best left for the trier of fact. *See Kohus*, 328 F.3d at 853 (quoting *Wickham v. Knoxville Int'l Energy Exposition, Inc.*, 739 F.2d 1094, 1097 (6th Cir. 1984)) (explaining that "[i]n copyright infringement cases 'granting summary judgment, particularly in favor of a defendant, is a practice to be used sparingly[.]"); *see also Hoehling v. Universal City Studios, Inc.*, 618 F.2d 972, 977 (2d Cir. 1980) ("Because substantial similarity is customarily an extremely close question of fact, summary judgment has traditionally been frowned upon in copyright litigation[.]").

For these reasons, the Court concludes that Defendants are not entitled to summary judgment on Design Basics' copyright infringement claims.

### Digital Millennium Copyright Act

Design Basics alleges that Defendants distributed architectural plans that were copies and/or derivatives of Design Basics' plans for which the CMI had been removed and/or omitted. (*See* Compl. ¶¶ 42-44, ECF No. 1 at Pg ID 10.)

31

As relevant to Design Basics' claim, the DMCA provides:

> **Removal or alteration of copyright management information.**  No person shall, without the authority of the copyright owner or the law—
>
> (1) intentionally remove or alter any copyright management information,
>
> (2) distribute or import for distribution copyright management information knowing that the copyright management information has been removed or altered without authority of the copyright owner or the law, or
>
> (3) distribute, import for distribution, or publicly perform works, copies of works, or phonorecords, knowing that copyright management information has been removed or altered without authority of the copyright owner or the law,
>
> knowing, or, with respect to civil remedies under section 1203, having reasonable grounds to know, that it will induce, enable, facilitate, or conceal an infringement of any right under this title.

17 U.S.C. § 1202(b). [10]  The statute defines CMI as the information conveyed in

connection with copies of a work, such as its title, author, copyright owner, the

---

[10] In response to Defendants' summary judgment motion, Design Basics argues that it also alleges a violation of subsection (a) of the statute, which prohibits providing CMI that is false or distributing or importing for distribution CMI that is false.  17 U.S.C. § 1202(a).  Based on the allegations in the Complaint, the Court fails to see how Design Basics alleges conduct falling within this section. Nowhere does Design Basics assert that Defendants displayed or distributed architectural plans with false CMI.  Design Basics does not elaborate on the substance of its purported § 1202(a) claim in its brief.  (ECF No. 69 at Pg ID 3732.)

terms and conditions for use of the work, and identifying numbers or symbols referring to the work's copyright information. *Id*. § 1202(c)(3). A plaintiff alleging a violation of § 1202(b) must show: (1) the existence of CMI on the infringed work; (2) removal and/or alteration of that information; (3) that the removal and/or alteration was done intentionally; and (4) that the removal was done with knowledge or reason to know that it will induce, enable, facilitate, or conceal an infringement. *See Mango v. BuzzFeed, Inc.*, 356 F. Supp. 3d 368, 376-77 (S.D.N.Y. 2019); *Janik v. SMG Media, Inc.*, No. 16 Civ. 7308, 2018 WL 345111, at *12 (S.D.N.Y. Jan. 10, 2018).

Defendants maintain that Design Basics' DMCA claim fails because it lacks evidence that Defendants removed CMI from Design Basics' "product or *original* work." (ECF No. 63 at Pg ID 2916 (emphasis added by Defendants) (quoting *Design Basics, LLC v. WK Olson*, No. 1:17-cv-7432, 2019 WL 527535, at *5 (N.D. Ill. Feb. 11, 2019)) ("An action for removal of copyright management information requires the information to be removed from a plaintiff's product or original work.").) In *WK Olson*, the court explained that "basing a drawing on another's work is not the same as removing copyright management information[.]" 2019 WL 527535, at *5 (quoting *Frost-Tsuji Architects v. Highway Inn, Inc.*, No. 13-00496, 2014 WL 5798282, at *5 (D. Haw. Nov. 7, 2014)). As the district court explained in *Frost-Tsuji Architects*: " 'Virtually identical' plans could have been

created by redrawing [the plaintiff]'s plans and not including [the plaintiff]'s copyright management information, but that would not involve any removal or alteration of copyright management information from [the plaintiff]'s original work." 2014 WL 5798282, at *5; *see also Kirk Kara Corp. v. W. Stone & Metal Corp.*, No. cv-20-1931, 2020 WL 5991503, at *6 (C.D. Cal. Aug. 14, 2020) (dismissing the plaintiff's DMCA claim even though "the works may be substantially similar," because the "[d]efendant did not make identical copies of [the p]laintiff's works and then remove the engraved CMI"). As Design Basics alleges only that Defendants "removed and/or omitted [CMI] from *copies* of [Design Basics'] works" (Compl. ¶¶ 42, 44, ECF No. 1 at Pg ID 10), Defendants argue that they are entitled to summary judgment on Design Basics' DMCA claim.

Design Basics responds that this interpretation of the statute is contrary to its intent and case law interpreting it, which hold that liability attaches where a party intentionally omits CMI or facilitates the omission of CMI. (ECF No. 69 at Pg ID 3731 (citing *GC2 Inc. v. Int'l Game Tech, PLC*, 255 F. Supp. 3d 812, 822 (N.D. Ill. 2017); *Agence France Presse v. Morel*, 769 F. Supp. 2d 295 (S.D.N.Y. 2011)).) In *GC2 Inc.*, however, the defendant was alleged to have removed CMI from electronic copies of the plaintiff's original artwork. 255 F. Supp. 3d at 816-17, 821. Similarly, in *Agence France Presse*, the plaintiff posted the defendant's photographs on its online database, designating the plaintiff and an image licensing

company as licensing agents and a third party as the photographer.  769 F. Supp.

2d at 299-300.  As such, neither case suggests that the statute applies when CMI is

removed or omitted from non-original work.

As Design Basics does not allege that Defendants removed or omitted CMI

from Design Basics' original works, the Court is granting summary judgment to

Defendants with respect to Count IX of the Complaint.

## Conclusion

In summary, the Court finds spoliation sanctions unwarranted in this matter.

Design Basics shows that its "late" disclosure of its expert and his report was

substantially justified as it was in accordance with the parties' agreement. Thus,

the Court declines to strike the expert's testimony or his report.  Finally,

Defendants fail to show that they are entitled to summary judgment based on their

statute of limitations and ownership defenses.  The Court finds a genuine issue of

material fact with respect to whether Defendants copied Design Basics' 2761

Mayberry or 1748 Sinclair plans.  Defendants are entitled to summary judgment,

however, with respect to Design Basics' DMCA claim.

Accordingly,

**IT IS ORDERED** that Defendants' Motion to Dismiss for Spoliation of

Evidence (ECF Nos. 57, 58) is **DENIED**.

35

**IT IS FURTHER ORDERED** that Defendants' Motion to Strike Plaintiff's Expert and Expert Report (ECF No. 60) is **DENIED**.

**IT IS FURTHER ORDERED** that Defendants' Motion for Summary Judgment (ECF Nos. 62, 63) is **GRANTED IN PART AND DENIED IN PART**.

**IT IS SO ORDERED.**

s/ Linda V. Parker
LINDA  V. PARKER
U.S. DISTRICT JUDGE

Dated: November 29, 2021